1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    United States of America,              )    CIV 08-2073-PHX-MHM (MHB)
                                             )
10              Plaintiff/Respondent,        )    CR 05-815-PHX-MHM
                                             )
11      v.                                   )    **REPORT AND RECOMMENDATION**
                                             )
12   Henry Hernandez-Echevarria,             )
                                             )
13              Defendant/Movant.            )
                                             )

14   TO THE HONORABLE MARY H. MURGUIA, UNITED STATES DISTRICT JUDGE:

15          Movant Henry Hernandez-Echevarria, who is confined in the Federal Correctional

16   Institution-Safford in Safford, Arizona, has filed a *pro se* "Motion Under 28 U.S.C. § 2255

17   to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody & 3582(c)(2)

18   Motion for Sentence Reduction" (Doc. #1).[1]

19          The facts underlying Movant's conviction and sentence are as follows. As a result of

20   a police investigation of drug trafficker Juan Chaidez-Echevarria, the Scottsdale Police

21   Department began surveillance and investigation of a suspected drug stash-house located at

22   2638 East Holmes Avenue, in Mesa, Arizona. (Doc. #9 at 2.) On August 13, 2005,

23   detectives served a search warrant on the house. (Doc. #9 at 2.) Inside the house, police

24   discovered approximately one pound of cocaine, one-half pound of methamphetamine,

25   $8,915 in cash, a drug ledger notebook and other assorted drug-related items. (Doc. #9 at 2.)

26

27          [1] The issue raised in the "3582(c)(2) Motion" – which is presented in Ground Four
28   of Movant's § 2255 Motion – has not been referred and is not included in this
     Recommendation. (Doc. #4.) This issue will be addressed separately by the district court.
     (Doc. #4.)

1    While the house was being searched, police also made contact with a silver Honda

2  Accord that had been observed going to and from the house during previous surveillance

3  operations. (Doc. #9 at 3.) The Accord was stopped at a location near the Holmes address.

4  (Doc. #9 at 3.) Movant was driving the vehicle and identified himself using the alias "Adan

5  Hernandez." (Doc. #9 at 3.) In a hidden compartment under the rear seat, police found

6  multiple plastic bags filled with approximately eight pounds of cocaine, nine pounds of

7  methamphetamine and miscellaneous drug-related items. (Doc. #9 at 3.) Police found

8  $4,335 in United States currency in the vehicle, both from the driver's seat where Movant

9  had been sitting and with the drugs under the rear seat. (Doc. #9 at 3.)

10    Movant was identified as the individual who rented and paid for the Holmes stash-

11  house. (Doc. #9 at 3.) Movant used the alias "Adan Hernandez Obeso" when he rented the

12  house. (Doc. #9 at 3.) Police also discovered that two days before his arrest, Movant, using

13  the alias Adan Hernandez Obeso, had registered a Ford Focus (a vehicle that two co-

14  defendants drove into the Holmes stash-house garage) to the Holmes stash-house address.

15  (Doc. #9 at 3.)

16    After his subsequent arrest, Movant ultimately pled guilty to the Indictment in court,

17  without a plea agreement, to Conspiracy to Possess with Intent to Distribute Cocaine and

18  Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(A)(viii) and

19  841(b)(1)(B)(ii). (Doc. #9-2 at 27-29.) Thereafter, the court sentenced Movant to a 168-

20  month term of imprisonment. (Doc. #9 at 2.) Movant then filed an appeal to the Ninth

21  Circuit Court of Appeals alleging that his sentence was unreasonable due to the disparity of

22  his sentence and the sentences received by the other co-defendants. (Doc. #9 at 2.) In a

23  March 11, 2007 Memorandum, the Ninth Circuit affirmed the sentence. (Doc. #9 at 2.)

24    On November 7, 2008, Movant filed a *pro se* "Motion Under 28 U.S.C. § 2255 to

25  Vacate, Set Aside or Correct Sentence by a Person in Federal Custody" asserting the

26  following grounds for relief. (Doc. #1.) In Ground One, Movant alleges that his sentence

27  is illegal because he was not advised of, and did not waive, his right to have the government

28  prove the drug quantity to a jury, beyond a reasonable doubt. (Doc. #1 at 5.) He claims that

his sentence is based on "unproved and unadmitted drug quantities." (Doc. #1 at 5.) In Ground Two, he contends that he was offered a plea agreement that would have capped his sentence at 144 months' imprisonment but he did not accept that agreement because his attorney incorrectly advised him that the plea was conditioned on his agreement to cooperate with the government and incriminate his cousin. (Doc. #1 at 6.) Movant claims he would have accepted the plea agreement had he been aware that cooperation was unnecessary. (Doc. #1 at 6.) In Ground Three, Movant alleges that his trial and appellate attorneys were ineffective based on the acts and omissions described in Grounds One and Two. (Doc. #1 at 7.)

On March 2, 2009, Respondent filed a Response to Motion Under 28 U.S.C. § 2255 (Doc. #9), and on March 17, 2009, Movant filed a Reply (Doc. #10). In its Response, Respondent argues that all of Movant's claims fail on the merits.

**DISCUSSION**

**A.    Ground One**

In Ground One, Movant claims that his sentence is illegal because he was not advised of, and did not waive, his right to have the government prove the drug quantity to a jury, beyond a reasonable doubt. (Doc. #1 at 5.) He states that his sentence is based on "unproved and unadmitted drug quantities." (Doc. #1 at 5.)

On June 5, 2006, Movant pled guilty to the Indictment in court, without a plea agreement, to Conspiracy to Possess with Intent to Distribute Cocaine and Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(A)(viii) and 841(b)(1)(B)(ii). (Doc. #9-2.) During the change of plea proceeding, the district court engaged in the following colloquy with the parties regarding the drug quantity at issue:

> THE COURT: All right. At this time, I'm going to call upon Mr. Boyle to state here in open court what he believes the Government would be able to prove if they were to proceed with trial against you and the facts that would support those elements. I want you to listen very carefully, Mr. Hernandez. After he's done, I'm going to ask you if you agree or disagree with anything that he has said, and then I'll have some specific questions regarding your role in this offense. Understood?
>
> THE DEFENDANT: Yes.

MR. BOYLE: Your Honor, on August 13th of 2005, local police and federal agents served a search warrant on a home in Mesa at 2638 East Holmes here in the District of Arizona. Inside that house, they found that this was a stash house for repackaging of drugs. There was no furniture to speak of. There was over one pound of cocaine, and half a pound of methamphetamine found in the house along with drug paraphernalia and packaging equipment.

Surveillance from the agents that day indicated there was also a Honda Accord connected with that location that would be arriving back to the location at a time around noon. There was a search warrant for that Accord. And within two miles of the Holmes address, agents made contact with the Honda Accord. This defendant was the driver of that Accord.

Inside the Accord, behind the back seat, in a hidden compartment, agents found over nine pounds of cocaine and over nine pounds of methamphetamine. The actual amount of methamphetamine was over 4,107 grams and of cocaine over 4,005 grams. They also found several thousand dollars in cash in the Honda Accord.

This defendant, from the investigation, was the person who paid the rent at the home's address. There is a witness who will indicate this defendant paid the address – or the rent for that address.

Number two, a vehicle was registered to this defendant on August 11th, two days before this search warrant. That vehicle was registered in the name of Adon Obeso-Hernandez at the Holmes address. The evidence will show that this defendant did not live there, and did believe that was a car that was intended to be used in the drug sale business because the defendant, of course, could have registered the vehicle in his own name to his living address had he wanted to. Moreover, there was a letter addressed to the defendant, Henry Hernandez-Echevarria, that was found at the home's address.

From all the information it's clear that this defendant was a person who rented the house, he was connected to the house, and on the date in question, he was delivering drugs back to the house when law enforcement made contact with him.

The amounts, of course, are over 500 grams for both cocaine and methamphetamine. And this defendant was one of several individuals, because we also know Jose Martinez Sanchez was a person who lived in the house and the defendant Jorge Alberto Echevarria-Acevez was waiting at the house with these drugs. Those three individuals, along with other individuals, conspired to package, repackage and sell and distribute methamphetamine and cocaine.

THE COURT: Mr. Hernandez, did you hear Mr. Boyle?

THE DEFENDANT: Yes.

THE COURT: And is everything he said correct?

THE DEFENDANT: Yes.

THE COURT: So you were in Scottsdale, or the District of Arizona, on August the 13th of 2005?

THE DEFENDANT: Yes.

THE COURT: And were you in fact driving this Honda Accord?

THE DEFENDANT: Yes.

THE COURT: And this is the same Honda Accord that was stopped by the police and that in which it was found nine pounds of meth and nine pounds of cocaine; is that correct?

THE DEFENDANT: Yes.

THE COURT: And were you aware of the drugs in the car?

THE DEFENDANT: Yes.

THE COURT: And were you aware of the amount of drugs in the car?

THE DEFENDANT: The amount of drugs, no.

THE COURT: What were you aware of?

THE DEFENDANT: That somebody placed them there and I was the one who transported them.

THE COURT: And you had no idea what the amount was?

THE DEFENDANT: Not exactly – not exactly, but I had an idea there was something.

THE COURT: You knew it was a substantial amount of drugs?

THE DEFENDANT: Well, yes.

THE COURT: Did you – were you aware that there were drugs back at the house?

THE DEFENDANT: Yes.

THE COURT: You knew this was a drug house or a drug stash house?

THE DEFENDANT: Yes.

THE COURT: Tell me what your role was in this conspiracy.

THE DEFENDANT: Sometimes I would go and pick it up. And then I would wait for somebody to come and take it away.

THE COURT: And when you say "it," is that the drugs?

THE DEFENDANT: Yes.

THE COURT: What kind of drugs?

- 5 -

1    THE DEFENDANT: Methamphetamine and cocaine.

2    THE COURT: And anything else with respect to your role?

3    THE DEFENDANT: No, Your Honor.

4    THE COURT: And were you paying the rent for this drug stash house in Scottsdale?

5    THE DEFENDANT: May I ask my question?

6    THE COURT: Certainly.

7    THE DEFENDANT: My attorney a question?

8    MR. BOYLE: And it was in Mesa, Your Honor.

9    THE COURT: I'm sorry, I thought it was Scottsdale.

10   MR. BOYLE: It was Scottsdale Police Department but Mesa.

11   THE COURT: Okay, thank you.

12   THE DEFENDANT: I paid the first few months and I didn't pay the last one. I am sorry, I made a mistake. I didn't pay for the first two months. I'm sorry, Your Honor. It was the last two months.

13   

14   THE COURT: Repeat that again for me.

15   THE DEFENDANT: Okay.

16   THE COURT: What – did you pay the rent for this house in Mesa? I'm corrected, it was the house in Mesa.

17   

18   THE DEFENDANT: Yes. I paid for the first four months. And I didn't pay for the last two months.

19   THE COURT: And, I guess there was a letter addressed to you that the officials, the police officials found, is that correct, that indicated that you were responsible for the house?

20   

21   THE DEFENDANT: That there was a letter?

22   THE COURT: Mr. Boyle just referred to a letter addressed to you that dealt with the fact that you rented the house. Is this correct?

23   

24   MR. BOYLE: Your Honor, it was just the letter that indicated – that someone had mailed him in his name Henry Hernandez-Echevarria a letter to that home's address, showing that someone had connected him to that address.

25   

26   THE COURT: I see. Is this correct, what Mr. Boyle said?

27   THE DEFENDANT: Yes.

28   

- 6 -

1  THE COURT: Okay.  Is the Government satisfied with the factual basis and the voluntariness of the plea?

2

3  MR. BOYLE: I would have one addition, Your Honor, and that is that the defendant knew that this was an organization which was distributing methamphetamine and cocaine in an amount of 500 grams.  Might not know the exact amount in the vehicle that day, but I think he would know from the experience with this group that it was a group that he was involved with that was moving and distributing over 500 grams of both methamphetamine and cocaine.

4

5

6  THE COURT: Mr. Hernandez, did you hear that question?

7  THE DEFENDANT: Yes.

8  THE COURT: Do you understand it?

9  THE DEFENDANT: Yes.

10  THE COURT: And what's the answer?

11  THE DEFENDANT: Yes, I did know.

12  THE COURT: That this group that you're involved here with in this conspiracy was responsible for more than 500 – for distributing or transporting more than 500 grams of meth and more than 500 grams of cocaine; is that correct?

13

14

15  THE DEFENDANT: Yes.

16  (Doc. #9-2 at 20-27.)

17       Thereafter, at Movant's sentencing hearing held on January 8, 2007, the court found

18  that the statements in the presentence report, which calculated a base offense level of 38

19  based on drug quantity, were supported by "a preponderance of the reasonably reliable

20  evidence" and, as such, adopted them as the court's findings of fact.  (CR 05-815-PHX-

21  MHM, Doc. #132 at 11.)  The court informed Movant that:

22       Pursuant to the statute, there are certain factors that I must consider in determining what a fair and just sentence should be in your case.  I need to consider the nature and circumstances of the offense, your history and your characteristics, and impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to any future criminal conduct, protects the public from any further crimes, and provides you with the necessary care and training.  Also can consider the advisory sentence – sentencing guideline recommendations that we have discussed previously.

23

24

25

26

27       In reviewing the nature and circumstances of this offense, it's clear that this is a very serious drug trafficking case involving a large amount of drugs, and dangerous drugs.  Not even counting the drugs that were in the house, the

28

1           drugs in the car that you were driving that day, as you've heard referenced, nine pounds of methamphetamine and eight pounds of cocaine.

(CR 05-815-PHX-MHM, Doc. #132 at 33.) The court ultimately sentenced Movant to a 168-month term of imprisonment. (CR 05-815-PHX-MHM, Doc. #132 at 36.)

Citing to the presentence report, Movant contends that his sentence is illegal in that the court "based [his] sentence on an unmentioned 3,819 grams of methamphetamine (actual) and 56.4 grams of cocaine base, plus 5,019.87 grams of [cocaine] and 551.63 grams of a mixture containing methamphetamine," when he only admitted to a drug quantity of over 500 grams of methamphetamine and over 500 grams of cocaine. (Doc. #1 at 5, 16.) The Court disagrees.

Movant's multiple admissions set forth in the change of plea proceeding regarding the quantity of drugs are clear. Furthermore, the sentencing guidelines require the court to include relevant conduct in the sentencing calculation. The Ninth Circuit has held that provisions of the Guidelines that use compulsory language require the district court to consider drug amounts from acts outside the offense of the conviction, so long as they "were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2)[2]; see United States v. Grissom, 525 F.3d 691, 698-99 (9th Cir. 2008) (the district court "cannot, however, decline to consider conduct that qualifies as relevant under the guideline"). In fact, the district court would have been permitted to go

---

[2] U.S.S.G. § 1B1.3(a)(2) provides in pertinent part:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

* * *

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction ... .

- 8 -

1  so far as to consider acquitted relevant conduct.  See United States v. Watts, 519 U.S. 148,

2  157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from

3  considering conduct underlying the acquitted charge, so long as that conduct has been proved

4  by a preponderance of the evidence.").

5       Moreover, the term "illegal sentence" has "a precise legal meaning."  United States

6  v. Vences, 169 F.3d 611, 613 (9th Cir. 1999).  It does not apply to all sentences where a legal

7  error was made.  Rather a sentence is illegal only if it is one "'not authorized by the judgment

8  of conviction' or 'in excess of the permissible statutory penalty for the crime.'"  Vences, 169

9  F.3d at 613 (quoting United States v. Fowler, 794 F.2d 1446, 1449 (9th Cir. 1986)).  Movant's

10  sentence was authorized by the judgment of conviction and it did not exceed the statutory

11  maximum sentence of life imprisonment.

12       Accordingly, the Court finds that Movant's sentence was not "illegal" or based on

13  "unproved and unadmitted drug quantities."

14  **B.    Ground Two**

15       In Ground Two, Movant claims that he was offered a plea agreement that would have

16  capped his sentence at 144 months' imprisonment but he did not accept that agreement

17  because his attorney incorrectly advised him that the plea was conditioned on his agreement

18  to cooperate with the government and incriminate his cousin. (Doc. #1 at 6.)  Movant states

19  he would have accepted the plea agreement had he been aware that cooperation was

20  unnecessary.  (Doc. #1 at 6.)

21       The Court finds Movant's claim as alleged in Ground Two conclusory and

22  unpersuasive.  Movant fails to present a single fact or evidence specific to this claim.  He

23  offers no letters, memoranda or transcripts in support of this allegation.  "Mere conclusory

24  allegations do not warrant an evidentiary hearing."  Shah v. United States, 878 F.2d 1156,

25  1161 (9th Cir. 1989).  Where a prisoner's motion presents no more than conclusory

26  allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not

27  required.  See United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986).

28

1      Nothing in the record before this Court supports Movant's assertion that he was given

2 a plea offer contingent on cooperation with the Government. Indeed, the pretrial conference

3 transcript, the change of plea transcript, and the sentencing transcript all contradict Movant's

4 allegation. At an April 25, 2006 final pretrial conference where Movant was present, the

5 Government informed the district court of the terms of the agreement and the plea deadline:

6      The offer that has been extended and will remained extended now until May
     6 is that they would of course plead to the conspiracy charge in the indictment.

7      They would receive a safety valve adjustment, if appropriate, a stipulation to
     no aggravating role, and a cap of 144 months if they were criminal history

8      category I.

9      That would give the Court discretion. I believe it will fall within the guideline
     range that I've calculated for this offense. And that's available for the top two

10      defendants.

11 (Doc. #9-1 at 12.)

12      Likewise, there is nothing in the change of plea transcript, the sentencing transcript,

13 or the written record in general that lends any credence to Movant's statement. (Doc. #9-2;

14 (CR 05-815-PHX-MHM, Doc. #132.)

15      Moreover, the timing of Movant's claim is suspect. Movant did not raise this claim

16 at any time in district court. He had an opportunity to speak at the pretrial conference, prior

17 to his guilty plea before the court, prior to sentencing, and also at his sentencing hearing. At

18 no time did Movant assert that he believed the Government's offer was predicated on

19 cooperation.

20      Accordingly, the Court finds that Movant's claim as asserted in Ground Two is

21 conclusory – unsupported by any facts and refuted by the record.

22 **B.**    **Ground Three**

23      In Ground Three, Movant contends that his trial and appellate attorneys were

24 ineffective based on the acts and omissions described in Grounds One and Two. (Doc. #1

25 at 7.) Movant appears to arguing that his counsel was ineffective for failing to object to

26 "unproved and unadmitted drug quantities," and that but for his counsel's alleged

27 ineffectiveness, he would have accepted a 144-month-cap offer.

28

1    The two-prong test for establishing ineffective assistance of counsel was set forth by

2    the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on an

3    ineffective assistance claim, a convicted defendant must show (1) that counsel's

4    representation fell below an objective standard of reasonableness, and (2) that there is a

5    reasonable probability that, but for counsel's unprofessional errors, the result of the

6    proceeding would have been different.  See id. at 687-88.  There is a strong presumption that

7    counsel's conduct falls within the wide range of reasonable assistance.  See id. at 689-90.

8    The two-prong test set forth in Strickland also applies to challenges to guilty pleas based on

9    ineffective assistance of counsel.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  A defendant

10   who pleads guilty based on the advice of counsel may attack the voluntary and intelligent

11   character of the guilty plea by showing that the advice he received from counsel fell below

12   the level of competence demanded of attorneys in criminal cases.  See id. at 56.  To satisfy

13   the second prong of the Strickland test, "the defendant must show that there is a reasonable

14   probability that, but for counsel's errors, he would not have pleaded guilty and would have

15   insisted on going to trial."  Id. at 59.

16   The Court having reviewed the record finds that Movant does not demonstrate that

17   his counsel's performance was deficient.  Movant has not provided any evidence to support

18   his allegations.

19   As to Movant's first argument related to counsel's failure to object to "unproved and

20   unadmitted drug quantities," Movant has failed to demonstrate why his counsel should have

21   objected, when Movant had agreed to the drug quantity numerous times during the change

22   of plea proceeding.  (Doc. #9-2.)

23   Movant's second argument – stating that but for his counsel's alleged ineffectiveness,

24   he would have accepted a 144-month-cap offer – is similarly unpersuasive.  The record and

25   relevant transcripts establish that Movant was satisfied with his attorney's advice and that

26   he pled guilty knowingly and voluntarily.  Specifically, when he pled guilty, Movant stated

27   in court that he understood the nature of the charge and that he was voluntarily entering his

28   plea of guilty, without force, threats or promises.  (Doc. #9-2 at 9-10; 13-16.)  He also stated

1  that he was satisfied with the performance of his attorney.  (Doc. #9-2 at 8-10.)  Movant

2  consistently assured the court throughout the change of plea proceeding that he understood

3  and was acting voluntarily leading to the court's finding that Movant's plea was "knowingly,

4  intelligently and voluntarily made." (Doc. #9-2 at 13-20; 29.)  "Solemn declarations in open

5  court carry a strong presumption of verity."  United States v. Rubalcaba, 811 F.2d 491, 494

6  (9th Cir. 1986).  Thus, Movant has not established that his attorney's performance was

7  deficient and that this deficient performance rendered his guilty plea involuntary.

8       Movant has also failed to demonstrate prejudice.  As the Court has stated, in Hill v.

9  Lockhart, the United States Supreme Court explained that a defendant who pled guilty

10 demonstrates prejudice caused by counsel's incompetent performance in advising him to

11 enter the plea by establishing a reasonable probability that, but for counsel's incompetence,

12 he would not have pled guilty and would have insisted, instead, on proceeding to trial.  See

13 474 U.S. at 59.

14      First, the Court notes that Movant is not suggesting that he would not have pled guilty

15 or that would have proceeded to trial.  Rather, Movant states "[b]ecause I was guilty ... I pled

16 guilty [] and [I] am not now backing out of it." (Doc. #1 at 5.)  Second, Movant has failed

17 to provide any evidence, except his statement in his Motion, that but for his counsel's alleged

18 ineffectiveness, he would have accepted a 144-month-cap offer.  Establishing Strickland

19 prejudice requires Movant to "prove there was a reasonable probability he would have

20 accepted the offer."  Jones v. Wood, 114 F.3d 1002, 1012 (9th Cir. 1997).  There is no

21 evidence in the record to show it was probable Movant would have accepted the

22 government's offer of a 144-month cap.  Nothing in the record shows that it was probable

23 that Movant was even interested in pleading guilty to the Indictment prior to the eve of trial.

24 As such, Movant has failed to demonstrate prejudice.

25      Accordingly, the Court finds that Movant has failed to satisfy either prong of the

26 Strickland standard.

27

28

**CONCLUSION**

For the foregoing reasons, the Court finds that Movant's claims as alleged in Grounds One, Two, and Three of his Motion are without merit. The Court will recommend that Movant's Motion be denied.

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. #1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed.R.Civ.P. 72.

DATED this 7th day of August, 2009.

Michelle H. Burns
United States Magistrate Judge